[Cite as *White v. White*, 2014-Ohio-1288.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| RONALD C. WHITE | : | |
| | : | Appellate Case No. 2013-CA-86 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 07-DR-544 |
| v. | : | |
| | : | |
| STACEY L. WHITE, nka McCONNELL | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of March, 2014.

. . . . . . . . . .

ROBERT N. LANCASTER, JR., Atty. Reg. #0039461, Pavlatos, Catanzaro & Lancaster, Co. L.P.A., 700 East High Street, Springfield, Ohio 45505
      Attorney for Plaintiff-Appellee

JENNIFER J. WALTERS, Atty. Reg. #0066610, Huffman, Landis, Weaks & Walters Co., L.P.A., 80 South Plum Street, Troy, Ohio 45373
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant Stacy White appeals from an order of the Clark County

Court of Common Pleas, Domestic Relations Division, denying her motion for a reallocation of

parental rights and overruling her motion to show cause regarding her claim that Mr. White wilfully and wantonly disregarded a prior visitation order.[1] She contends that the trial court improperly permitted the introduction of evidence regarding events occurring prior to the original allocation of parental rights and that the trial court abused its discretion with regard to opposing counsel's questioning of witnesses. She further contends that the evidence supports neither the trial court's finding that she failed to demonstrate a change of circumstances necessitating a reallocation of parental rights, nor its finding that the child's best interest was met by continuing the designation of Mr. White as the residential parent. Finally, Ms. McConnell contends that the trial court's finding that Mr. White did not wilfully deny visitation is not supported by the evidence in the record.

{¶ 2} We find no abuse of discretion with regard to the trial court's decision regarding the admission of testimony and evidence. We further conclude that the trial court did not err with regard to any of its findings, and that its decision to deny Ms. McConnell's motion is supported by the evidence. Accordingly, the order of the trial court from which this appeal is taken is Affirmed.

## I. The Course of Proceedings

{¶ 3} The parties were married in 2000. They have one minor child as a result of the marriage. Mr. White filed a complaint for divorce in June 2007 and the parties were granted a divorce in January 2009. Mr. White was designated residential and custodial parent, and Ms.

---

[1] Stacey White has remarried since this divorce, and is now Stacey McConnell. For ease of reference, we will refer to her as Ms. McConnell.

McConnell was awarded parenting time in accordance with the trial court's standard order of visitation.   Ms. McConnell appealed; we affirmed.   *White v. White*, 2d Dist. Clark No. 2009 CA 17, 2009-Ohio-4311.

{¶ 4}   In April 2012, Ms. McConnell filed a motion to reallocate parental rights and responsibilities.   She claimed that Mr. White had interfered with her parenting time and telephone contact with the child.   She further claimed that she has remarried and "is residing in a stable home in Dayton with her current husband."   She also filed a motion to show cause in which she alleged that Mr. White had wilfully and wantonly disregarded the court's order regarding visitation.

{¶ 5}   Hearings on the motions were held on four different dates in 2012 and 2013. Following the hearings, the trial court denied the motion to reallocate, finding that Ms. McConnell had not demonstrated a change in circumstances.   The trial court also overruled the motion to show cause.   Ms. McConnell appeals.

## II.   Ms. McConnell Has Not Demonstrated that the Trial Court Gave Inappropriate Consideration to Testimony Concerning Events Preceding the Date of the Prior Adjudication of Parental Rights and Responsibilities in this Case

{¶ 6}   Ms. McConnell's First Assignment of Error states:

THE TRIAL COURT ERRED BY ALLOWING EVIDENCE INTO THE RECORD THAT WAS KNOWN TO THE PARTIES AND THAT WAS REGARDING EVENTS THAT TOOK PLACE PRIOR TO JANUARY 12, 2009, THE DATE OF THE FILING OF THE JUDGMENT ORDER AND DECREE OF

DIVORCE.

{¶ 7}  Ms. McConnell contends that the trial court permitted the introduction of evidence regarding events that occurred prior to the date of the divorce decree.  She contends that the trial court abused its discretion by permitting this evidence, because it was irrelevant to the issue of reallocation.

{¶ 8}  Ms. McConnell has not set forth "[a] statement of facts relevant to the assignments of error presented for review, with appropriate *references to the record* in accordance with division (D) of this rule."  App.R. 16(A)(6).  (Emphasis added.)  We are not required to comb through the record on appeal to find the parts of the record that bear upon an assignment of error when the party assigning the error has failed to direct our attention to the place in the record demonstrating the error.

{¶ 9}  Nevertheless, from our review of the transcript of the hearing with regard to Ms. McConnell's manifest-weight-of-the-evidence discussed in Part IV, below, we note two incidents bearing upon this assignment of error.  In the first of these, Ms. McConnell's adult daughter testified on her behalf.  At one point, the daughter testified to the effect that she and her mother had always enjoyed a good relationship.  On cross-examination, counsel for Mr. White attempted to impeach this testimony by referring to the daughter's testimony given during the original divorce hearing, in which the daughter testified that she and her mother did not have a good relationship.  Ms. McConnell contends that this line of questioning was improper, because it addressed events occurring prior to the date of the divorce decree in contravention of R.C. 3109.01(E)(1)(a).  We disagree.  The purpose of the  questioning, which was brief and focused, was not to establish facts regarding a change in circumstances; the purpose was to impeach the

daughter's credibility.

{¶ 10} Next, we note that counsel for Mr. White made one other reference to events occurring prior to the date of the decree when he asked Ms. McConnell's mother if she knew why Ms. McConnell had lost the job she had during the marriage. The mother merely responded that "the economy" was to blame for the job loss.

{¶ 11} When conducting a bench trial, the trial court is presumed to have considered only admissible evidence unless the record indicates otherwise. *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, ¶ 27 (8th Dist.). Ms. McConnell does not claim that the trial court inappropriately considered this testimony, nor does she make any claim that she was materially prejudiced by the testimony. We find no indication in the record that this testimony affected the outcome of the trial.

{¶ 12} Finally, in determining whether there has been a change in circumstances since the last determination of parental rights and responsibilities, some comparison of the circumstances of the parties *after* that determination with the circumstances of the parties *before* that determination is appropriate, and this may require some evidence concerning the circumstances of the parties before the prior determination.

{¶ 13} Ms. McConnell's First Assignment of Error is overruled.

### III. Testimony Upon Re-Cross-Examination, to which Ms. McConnell Objected as Being Beyond the Scope of Re-Direct Examination, Either Was Not Beyond the Scope of Re-Direct, or Was Not Sufficiently Prejudicial to Merit Reversal

{¶ 14} Ms. McConnell's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED BY ALLOWING APPELLEE'S COUNSEL TO QUESTION WITNESSES BEYOND THE SCOPE OF RE-DIRECT.

{¶ 15}   Ms. McConnell cites several places in the record where she contends that the trial court improperly permitted Mr. White's attorney to inquire, during re-cross-examination, into matters that were not brought up during re-direct examination.

{¶ 16}   With regard to one of the cited passages, Ms. McConnell had testified she had some medical conditions that prevented her from working and caused her to have difficulty walking and to need to elevate her legs by the end of the day.   During re-direct examination, she testified that those conditions would not impact her ability to care for the child.   On re-cross, she was asked whether she was performing with a band in the evenings.   Counsel for Ms. McConnell objected, contending that this was beyond the scope of the re-direct examination. We disagree.   During re-direct, Ms. McConnell was asked about her medical conditions, which she had previously testified affected her ability to walk in the evenings, with regard to her ability to care for the child.   Counsel for Mr. White then asked the questions about her ability to perform with a band in the evenings despite these claimed medical conditions.   We conclude that this was a valid attempt to determine what effect the medical conditions actually had on her – an issue that was raised on re-direct with regard to her ability to care for her son.   We find no error by the trial court in permitting this limited line of questioning.

{¶ 17}   Next, Ms. McConnell complains that counsel also went beyond the scope of re-direct examination by asking her questions about her Facebook postings showing pictures of her "dream home" in Waynesville, Ohio.   Counsel asked her whether this indicated that she

wanted to move again, to which she responded in the negative. We agree that this went beyond the scope of the re-direct. However, Ms. McConnell does not state how this prejudiced her. Furthermore, we find no indication that this question affected the outcome of the proceeding. The presumption that the trial court, in a bench trial, considered only admissible evidence is not overcome. *Cleveland v. Welms, supra.*

{¶ 18} In the next cited passage, Ms. McConnell's counsel, on re-direct, asked Ms. McConnell's daughter why she had no communication with her family for an extended period of time. The daughter attributed it to the fact that she was in an abusive relationship and was not permitted by her abuser to contact her family. She testified that the only way her mother could have contacted her during this time was through Facebook. Mr. White's counsel then asked her about her access to Facebook, and how she found out that her mother had moved to Texas. The daughter testified that her sister had sent her a message on Facebook. Counsel then asked how much contact Ms. McConnell had with the sister, to which counsel objected. After the objection was overruled, the daughter testified that Ms. McConnell had "probably" seen the other daughter more than four times in the past two months. We agree that this question about the sister's contact with the mother exceeded the scope of re-direct. But again, it is not apparent how Ms. McConnell could have been prejudiced by this question and answer, and we find no indication that this question and answer had any effect upon the outcome of the proceeding.

{¶ 19} Finally, Ms. McConnell's mother was asked, on re-cross, about her contact with one of Ms. McConnell's daughters, to which she responded that she had very little contact over a three-year period. This question exceeded the scope of re-direct. But again, Ms. McConnell fails to demonstrate prejudice.

{¶ 20}   We conclude that upon this record, the presumption has not been overcome that the trial court, as the finder of fact, did not utilize any improper evidence in reaching its decision. Ms. McConnell's Second Assignment of Error is overruled.

**IV.  The Trial Court's Decisions that: (1) There Was Not a Change of Circumstances Justifying the Re-allocation of Parental Rights and Responsibilities; (2) Re-allocation of Parental Rights and Responsibilities Was Not in the Best Interest of the Child; and (3) Mr. White Did Not Wilfully and Wantonly Disregard the Court's Prior Order of Visitation, Are Not Against the Manifest Weight of the Evidence**

{¶ 21}   Ms. McConnell's Third, Fourth and Fifth Assignments of Error provide:

THE TRIAL COURT ERRED AGAINST THE WEIGHT OF THE EVIDENCE AND ABUSED ITS DISCRETION IN FINDING THAT THERE HAD NOT BEEN A CHANGE IN CIRCUMSTANCES SINCE THE FILING OF THE JUDGMENT ORDER AND DECREE OF DIVORCE ON JANUARY 12, 2009.

THE TRIAL COURT ERRED AGAINST THE WEIGHT OF THE EVIDENCE AND ABUSED ITS DISCRETION IN FINDING THE REALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES IS NOT IN THE BEST INTEREST OF THE MINOR CHILD.

THE TRIAL COURT ERRED AGAINST THE WEIGHT OF THE EVIDENCE AND ABUSED ITS DISCRETION BY FINDING APPELLEE DID

NOT WILLFULLY AND WANTONLY DISREGARD THE COURT'S PRIOR

ORDERS CONCERNING APPELLANT'S VISITATION RIGHTS.

**{¶ 22}** Ms. McConnell contends that the trial court's order denying her motion to reallocate parental rights is not supported by the evidence. Specifically, she claims that she demonstrated a change in circumstances and she demonstrated that a reallocation would be in the child's best interest. She further contends that the trial court erred in determining that Mr. White had not wilfully denied her parenting time and that it thus abused its discretion by overruling her motion to show cause on that issue.

**{¶ 23}** R.C. 3109.04(E)(1)(a) states that a:

court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

**{¶ 24}** "In order to prevail on a motion for reallocation of parental rights, the movant must demonstrate that (1) there has been a change in the circumstances of the child or the residential parent, (2) modification of the existing custody decree is necessary to serve the child's best interest, and (3) the harm likely to be caused to the child by a change of environment is outweighed by the advantages of the change of environment." *Chaney v. Chaney*, 2d Dist. Montgomery No. 24880, 2012-Ohio-626, ¶ 10, citing R.C. 3109.04(E)(1)(a). "A change in circumstances must be one of substance, not slight or inconsequential, to justify modifying a

prior custody order." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). We review a trial court's ruling on a motion for reallocation of parental rights for an abuse of discretion. *Chaney* at ¶ 9; *Musgrove v. Musgrove*, 2d Dist. Montgomery No. 24640, 2011-Ohio-4460, ¶ 7. "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect." *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

**{¶ 25}** The trial court found that no change in circumstances had occurred with regard to the child and Mr. White. They were residing in the same home and the child was attending the same school. The trial court went on to note that "most of the changes which have taken place since 2008 involve changes in Ms. McConnell's life." Specifically, Ms. McConnell testified that she had moved approximately eight times since she and Mr. White divorced. She moved in with an abusive boyfriend in Franklin for a "couple of months." She also moved to Texas for nine months, where she resided with a friend for a few months before moving in with Steven McConnell. Ms. McConnell and Steven McConnell moved back to Ohio in August 2011 and were married in December 2011.[2] From the time they moved back, to the time of the hearing in November 2012, they had lived in three different residences. Their current residence is in Centerville, approximately 42 miles from where the child and Mr. White reside. Ms. McConnell is not employed, and Mr. McConnell works from home for a company located in Chicago.

**{¶ 26}** The trial court also found that a change of custody would not be in the child's best interest. R.C. 3019.04(F)(1) sets forth the following factors to consider in determining the best interest of a child:

> (a) The wishes of the child's parents regarding the child's care;

---

[2] This is Ms. McConnell's fourth marriage.

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

* * *

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶ 27}** Both parents wish to have custody of the child. While the child was not interviewed, the Guardian Ad Litem appointed to represent his interests recommended that Mr.

White retain custody. The GAL further noted that the child had expressed the wish to retain the current arrangement. The child, as Ms. McConnell acknowledges, is thriving and well-adjusted in his father's home. He makes good grades, is on the honor roll and has friends. The child also lives near his paternal grandparents, with whom he has a good relationship. The child showed some reluctance to visit with his mother, and experienced some anxiety following the divorce. Mr. White enrolled him in therapy, and the child is now doing better with those issues. While there is evidence that the child is overweight, there is nothing in the record to support a finding that Mr. White is not properly dealing with that issue. Ms. McConnell had a child-support arrearage of approximately $1,774 at the time she filed her motion for reallocation, but her husband had paid that arrearage by the time of the hearing.

{¶ 28} Ms. McConnell claims that Mr. White has attempted to frustrate her communication and visitation with the child. Ms. McConnell's mother testified that she was with her daughter when Mr. White denied visitation, but she also testified that she visits with the child every other weekend while he is with Ms. McConnell. The GAL noted that he did not find evidence to support the claim that Mr. White denies visitation. The GAL further noted that Mr. White appears to encourage a relationship between the child and Ms. McConnell. Mr. White testified that he has not denied visitation, except for a few times when Ms. McConnell appeared without notice – during her stay in Texas – and only because he had already scheduled activities involving the child.

{¶ 29} From our review of the record, there is evidence to support a finding that the only times Ms. McConnell was denied visitation was when she traveled from Texas and attempted to exercise visitation, without prior notice to Mr. White. Indeed, Ms. McConnell's

own testimony was somewhat contradictory on this issue. She testified that she has been given every summer visitation since the divorce. She also admitted that she was given extra time when she asked for it following a school event.

{¶ 30} In any event, the trial court found that "both of the parties would honor and facilitate" parenting time and that Mr. White had not wilfully denied Ms. McConnell's parenting time. The trial court stated that it found the testimony of Mr. White credible and that Ms. McConnell's testimony "for the most part, was not [credible]."

{¶ 31} We agree with the trial court that Ms. McConnell has not demonstrated any change in the child and Mr. White's circumstances that would mandate a reallocation of parental rights. The record supports a finding that the current living arrangement is stable and the child is doing well. There is evidence in the record that, if believed, belies the claim that Mr. White wilfully denies visitation. The trial court's evaluation of the best-interest factors – which indicates that it is in the child's best interest for Mr. White to retain custody – has support in the record. Thus, we find that the trial court's order is not against the manifest weight of the evidence.

{¶ 32} We further conclude that, based upon the record, the trial court did not abuse its discretion or err with regard to its decision overruling Ms. McConnell's motion to show cause as she failed to demonstrate that Mr. White wilfully and wantonly interfered with her visitation rights or disregarded the trial court's order regarding visitation.

{¶ 33} The Third, Fourth and Fifth Assignments of Error are overruled.

## V. Conclusion

{¶ 34}   All of Ms. McConnell's Assignments of Error having been overruled, the order of the trial court overruling Ms. McConnell's motion for reallocation of parental rights and responsibilities and her motion to show cause, from which this appeal is taken, is Affirmed.

. . . . . . . . . . . . .

FROELICH, P.J., and HALL, J., concur.


Copies mailed to:

Robert N. Lancaster, jr.
Jennifer J. Walters
Hon. Thomas J. Capper